# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DEWAYNE LEVERSON**

**VERSUS**

**BJ'S RESTAURANTS, INC., ET AL.**

**CIVIL ACTION**

**NO. 18-751-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 16) filed by Defendants BJ's Restaurants, Inc., and BJ's Restaurant Operations Company (collectively, "Defendants"). Plaintiff Dewayne Leverson ("Plaintiff") opposes the motion (Doc. 18), and Defendants have filed a reply (Doc. 19). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted, and Plaintiff's claims are dismissed with prejudice.

**I.     Relevant Background**

    **A. Overview**

On or about February 17, 2018, Plaintiff was a patron of BJ's restaurant located in Baton Rouge, Louisiana (Defendants' *Statement of Uncontested Material Facts* ("*SUMF*") ¶ 1, Doc. 16-2.)[1] While dining, Plaintiff got up from his table and walked towards the restrooms. (*SUMF* ¶ 2.) As Plaintiff approached the hallway leading from the main dining room to the restrooms, he fell

---

[1] Plaintiff submitted a *Statement of Material Fact* ("*PSMF*") (Doc. 18-1) in an attempt to comply with M.D. La. L.R. 56(b). However, Plaintiff did not dispute all of Defendant's *SUMF*. Accordingly, because "[a]ll material facts set forth in the [Mover's] statement . . . will be deemed admitted, for purposes of the motion, unless controverted as required by this Rule," M.D. La. L.R. 56(b), those uncontroverted paragraphs of the *SUMF* will be deemed admitted for this ruling.

forward and struck his chin on the floor in the hallway outside the restroom. (*SUMF* ¶ 3.) Plaintiff testified of the hazard:

> Q. Okay. Do you know what caused you to fall?
>
> A. It was- the floor was slippery. I-I remember walking and I was, like-and I kind of—I did like this and I was trying—wait a minute. It happened so quick that I ain't- I ain't- I tried to catch myself and I fell. I got off balance and I slipped, and I tried to catch myself, like, with my hands, I think, and I hit my jaw.
>
> Q. Okay. So, do you know what was on the floor that caused you to—
>
> A. It-it was wet, because when I woke up, shirt was- had- it wasn't soaked, but you could tell it was mopped- the floor was mopped or something.
>
> . . .
>
> Q. Okay. So, do you know what on the floor?
>
> A. It had to be- it had to be water.

(Pl. Ex. B, Leverson Dep., 56–57, 59, Doc. 18-2.)

### B. The Key Testimony

The Court finds that this motion turns on the question of whether Defendants either created the allegedly harmful condition (water on the floor) or had actual or constructive notice of it. As a result, the Court will focus the remainder of this section on those facts highlighted by the Plaintiff on this issue.

First, Plaintiff points to the deposition of Justin Leenders, Defendants' senior manager on duty on the day of the accident. Leenders testified:

> Q. Who at BJ'S would be in charge of the restrooms and making sure the facility is clean?
>
> A. I would be from when I came in at 4:00. I would be the one to assign it to a team member to take care of.

(Pl. Ex. E, Leenders Dep., 12, Doc. 18-5.) Leenders further said:

2

> Q. So you would have no reason to check the floors?
>
> A. To check the floors?
>
> Q. Yes.
>
> A. I mean, I check them as I walk through the restaurant.
>
> Q. Okay. But for you to check that hallway and bathroom, I'm assuming you don't make a regular check on that, do you?
>
> A. I do it as I pass by on my figure eights.

(Pl. Ex. E, Leenders Dep., 26–27, Doc. 18-5.) Additionally, Leenders testified:

> Q. Okay. Maintenance, how do y'all maintain the bathrooms?
>
> A. How do we – well, doing restroom checks.
>
> Q. Okay. How often are the bathrooms cleaned?
>
> A. We try to do it every 30 minutes, but during our busy hours sometimes we're not able to do it every 30 minutes.
>
> Q. Okay. Do y'all keep records of that?
>
> A. We do not.

(Pl. Ex. E, Leenders Dep., 24, Doc. 18-5.) Leenders further said:

> Q. Do you have any records[,] or do you have any knowledge of anybody checking that hallway prior to Dewayne Leverson falling?
>
> A. Checking the hallway, no, sir.
>
> Q. As you sit here today can you tell us whether or not you checked that hallway prior to Dewayne Leverson falling?
>
> A. Specifically checking the hallway, no, sir. I would look at the floors as I do my figure eights, but not – I don't pick out just one section at a time and just check it.
>
> Q. As you sit here today though you don't remember checking that hallway for any type of spills or anything, do you?

A. Not for any spills, no, sir.

. . .

Q. All right. You don't – as you sit here today you don't remember the last time you did a figure eight before Dewayne Leverson fell, do you?

A. I mean, exact time frame, no, sir.

Q. Do you know of anyone else that would've checked the hallway?

A. No, sir.

Q. Y'all don't keep any type of log for checking the premises?

A. No. We do not.

Q. Okay. And as you sit here today you don't remember the last time before his fall you walked your figure eight?

A. No. I do not remember an exact time.

. . .

Q. And just to make sure I'm clear, you didn't – you don't know the last time anyone checked the hallway or bathroom prior to Dewayne Leverson falling?

A. I can't give you a specific time, no, sir.

Q. Or person?

A. Or person, no.

(Pl. Ex. E, Leenders Dep., 27, 29, 35, Doc. 18-5.)

Plaintiff also emphasizes the "wet floor sign" in the bathroom:

Q. Was there a wet floor sign in the bathroom when you approached my client, Dewayne Leverson?

A. To the best of my knowledge, I can't remember if there was one in there, but I know we typically do keep one in the bathrooms.

Q. And why is that?

A. Just for flow through traffic. You do get a lot of people that would wash their hands and create a wet floor and so we typically we keep one in both restrooms.

. . .

Q. Let's go back to these cones in the bathroom. Does BJ's have a problem with the floors in the bathroom being wet?

A. Not to my knowledge, no, sir.

Q. Well, why do you keep the cones out then?

A. It's more just for traffic reasons. It's a high traffic area.

Q. Okay. But this bathroom's in the back of the store, correct?

A. It is.

Q. Okay. If there's never a water problem in the bathroom, why do y'all have the cones?

A. I'm not – I'm not sure honestly. It's always been there since I have been at that restaurant.

Q. Okay. Have you ever gone into the bathroom and there's water on the floor?

A. Yes. There has been.

. . .

Q. Okay. So, indulge me a little bit. I'm trying to find out what the cones are for if there's not a water problem in there?

A. It's just something they've done since I've been there. They keep a wet floor sign in there. It's a heavy traffic area, the sinks.

Q. All right. To get to the bathrooms and if you're saying the bathroom's a heavy traffic area, you'd consider the hallway a heavy traffic area too also, correct?

A. Yeah. We could consider that a heavy traffic area, yes, sir.

. . .

> Q. So if we go to trial on this matter, I want to make sure I'm clear. Y'all just have the cones out there for no purpose in the bathroom?
>
> A. It's just the policy that they have.

(Pl. Ex. E, Leenders Dep., 16–17, 23–26, 33, Doc. 18-5.)

Plaintiff also maintains that the key area is only a "couple of feet" from the bathroom door:

> Q. How far from the bathroom entrance did he have his fall? When you first saw him, how far from the bathroom door was he?
>
> A. From the bathroom door, couple feet, maybe two feet.

(Pl. Ex. E, Leenders Dep., 15, Doc. 18-5.)

Lastly, Plaintiff relies on the testimony of Jameeka Bowie, who dined with Plaintiff on the day in question. She stated:

> Q. Please describe the condition of the floor in the hallway as it led up to the bathroom prior to you bringing Mr. Leverson into the bathroom, if you can?
>
> A. …As of me going towards the bathroom – as of me going towards the bathroom, between the first and the second hall in the middle of the mirrors, you can see where the – where it – it have a puddle of water. And not – not saying, like, a gallon of water as well, but it's – obviously, you can see from 10 footsteps away that you can actually see that it is some water being on the floor with footsteps leading out of the bathroom.

(Pl. Ex. C, Bowie Dep., 40-41, Doc. 18-3.)

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its

6

opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III. Discussion

#### A. Parties' Arguments

##### 1. Defendants' Original Memorandum (Doc. 16-1)

Defendants argue that Plaintiff cannot establish that he fell from a condition on the premises that presented an unreasonable risk of harm. Defendants pound the fact that Plaintiff fell in the hall, not the bathroom, and that he never saw water on the floor. Further, Plaintiff cannot establish that the water on his shirt caused him to fall. Lastly, a witness employee said Plaintiff convulsed on the floor.

Relevant here, Defendants also argue that there is no evidence that they created or had actual/constructive notice prior to the fall. Plaintiff said he did not know how the water got on the

floor, just that "maybe, it was mopped and it wasn't dry mopped." Plaintiff also said in his deposition that he did not know how long the water was on the floor, and none of the other witnesses saw water on the floor before the incident.

Lastly, there's no evidence that BJ's failed to use reasonable care.

## 2. Plaintiff's Opposition (Doc. 18)

Plaintiff responds that there are questions of fact on the hazardous condition issue. The front of his shirt was wet, and he testified that he believed there was water on the floor.

Further, Defendants created or had actual/constructive knowledge of the condition because they could not verify that they did their regular restroom checks. Moreover, Defendants typically keep a wet floor sign in the bathroom because of the traffic and the fact that people wash their hands there and create a wet floor. Additionally, Plaintiff fell only a couple of feet from the bathroom door. Also, Bowie, who dined in the restaurant with Plaintiff, said there was water on the floor ten steps away from the bathroom. Plaintiff asserts:

> Taken in the light most favorable to the non-moving party, in this case the Plaintiff, Dewayne Leverson, it is apparent that BJ's is on notice that the high traffic areas near the bathroom sinks present a sufficient enough wet floor problem that BJ's has instituted a policy of keeping wet floor cones in its bathrooms at all times. Whether BJ's knew or should have known that the area in which Dewayne Leverson fell -- the only ingress and egress point from, and a mere "couple feet" from, these highly trafficked areas which are so often wet that BJ's has invoked a policy of keeping wet floor signs up at all times – was hazardous, is a question of fact which precludes the granting of summary judgment.

(Doc. 18 at 7.) Plaintiff concludes:

> Leverson alleges that there was water on the floor in the hallway that caused him to slip and fall. His sworn testimony is that the front of his shirt was wet after the incident, and that he saw water on the floor in the bathroom after the incident. Justin Leenders, senior manager for BJ's, could not say whether BJ's upheld its own policy to monitor the restrooms and the hallway leading to the restrooms on Saturday, February 17, 2018. Safety (wet floor) Cones are left out all the time because of the high traffic area in and out the bathroom. Jameeka Bowie testified

8

that one could see water on the floor coming from the bathroom from "ten footsteps away". . . . There are clearly genuine issues of material fact as to whether there was water on the floor and whether BJ's should have had knowledge of the water on the floor.

(Doc. 18 at 8–9.)

### 3. Defendants' Reply (Doc. 19)

Defendants reply that, when viewing Plaintiff's testimony as a whole, it is clear that he did not know if there was water on the floor of the hallway and that he only speculated that there was water there because there was some in the bathroom. Further, Plaintiff cannot prove that the water caused him to fall. As to the created/actual/constructive notice inquiries, (1) there is no evidence Defendants created the condition; (2) there is no evidence that Defendants had actual notice of the alleged condition, only that the hallway was a "high flow through traffic area"; and (3) Plaintiff cannot show constructive notice, as there is no evidence of how long the water was on the floor or that it was there so long that Defendant should have known of its existence. The fact that there was a policy of a wet floor sign in the bathroom is not controlling for this accident that occurred in the hallway.

### B. Applicable Law

"A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. Rev. Stat. Ann. § 9:2800.6(A). "This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." *Id.* "Under the relevant statute for premises liability, Louisiana Revised Statute Annotated § 9:2800.6(B)(2), a business either must have created or had [actual or] constructive notice of the hazardous condition prior to the accident in order to be liable for injuries to a customer." *Lee v. Dolgencorp, L.L.C.*, 784 F. App'x 285 (5th Cir. 2019) (mem.) (per curiam).

" 'Constructive notice' means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." *Id.* § 9:2800.6(C)(1). To prove constructive notice, Plaintiff has the burden to "come forward with 'positive evidence' showing the damage causing condition existed for some period of time and that such time was sufficient to place the merchant defendant on notice of its existence." *Batiste v. United Fire and Casualty Company*, 17-482 (La. App. 5 Cir. 3/14/18); 241 So. 3d 491, 498 (citing *Flowers v. Wal-Mart Stores, Inc.*, 12-140, (La. App. 5 Cir. 7/31/12); 99 So. 3d 696, 699). "[M]ere speculation that the condition may have existed for some period of time is insufficient." *Batiste*, 241 So.3d at 498 (citing *Babin v. Winn-Dixie La., Inc.*, 00-0078, (La. 6/30/00); 764 So. 2d 37, 40). "Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period." *White v. Wal-Mart Stores, Inc.*, 97-0393 (La. 9/9/97); 699 So. 2d 1081, 1084. "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." *Id.* "Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall." *Id.* at 1084–85. "This is not an impossible burden." *Id.* at 1085.

### C. Analysis

Having carefully considered the matter, the Court finds that Plaintiff failed to create any genuine issue of material fact that Defendants either created the condition or had actual or constructive notice of it. As a result, summary judgment is warranted.

Preliminarily, Plaintiff has produced no evidence that Defendants created the allegedly hazardous condition at issue. Thus, if Plaintiff is to prevail, he must prove that Defendants had actual or constructive notice of it. La. Rev. Stat. Ann. § § 9:2800.6(B)(2).

He has failed to do so. Leenders specifically stated that he did not remember the last time he checked the hallway or bathroom before Plaintiff fell. (Pl. Ex. E, Leenders Dep. 27, 29, 35, Doc. 18-5.) Thus, he had no actual knowledge of the spill, and Plaintiff has not shown otherwise. Further, he had no constructive knowledge, as his testimony cannot possibly be read to satisfy the temporal element of the premises liability statute. *See Lee*, 784 F. App'x 285 ("The district court concluded that Lee offered no evidence to support a finding as to how long the hazardous condition had existed before Lee fell. We agree.").

The wet floor sign also does not save Plaintiff's claims. Plaintiff has established that the floor of the *bathroom* could be wet (Pl. Ex. E, Leenders Dep., 16–17, 23–26, 35, Doc. 18-5) and that Plaintiff fell "maybe two feet . . . [f]rom the bathroom door" (Pl. Ex. E, Leenders Dep., 15, Doc. 18-5). But even assuming Defendants had actual knowledge that the *inside* of the bathroom was wet, that does not mean that they had actual knowledge that the area *outside* the bathroom was. *See Mohammad v. P.F. Chang's China Bistro*, 548 F. App'x 236, 238–39 (5th Cir. 2013) ("The Mohammads again rely solely upon mere assertions . . . that spills in the kitchen *could* be tracked into the hallway as 'evidence' of actual knowledge on the part of P.F. Chang's that it was tracked into the hallway. That is insufficient to avoid summary judgment."). No reasonable juror could conclude otherwise.

The same reasoning applies to constructive notice; no reasonable juror could conclude that Defendants knew or should have known about the water a few feet from the door solely because it *could have* been tracked from the bathroom. *See id.* In any event, again, the time requirement

11

has not been met, as there is no evidence as to how long the water was on the floor, much less that it was there so long that Defendants should have discovered it in the exercise of reasonable care. *See Lee*, 784 F. App'x 285; *Mohammad*, 548 F. App'x at 239 ("The Mohammads have similarly presented no evidence that the liquid in this case was on the floor for any length of time—let alone that that time was sufficient that the restaurant have discovered its existence through the exercise of ordinary care. As a result, there is no issue of material fact regarding constructive notice."). For all these reasons, summary judgment is warranted.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 16) filed by Defendants BJ's Restaurants, Inc. and BJ's Restaurant Operations Company is **GRANTED**, and Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE.**

Signed in Baton Rouge, Louisiana, on December 16, 2019.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**